THE SELECT-MEN OF THE TOWN OF WETHERSFIELD *against* MONTAGUE and others :

#### IN ERROR.

Under the statute (*tit.* 88. *c.* 1. *s.* 1. 2. 3.) providing for the support of certain indigent relations, no assessment can be made for past expenditures, the provisions of the statute being exclusively prospective.

A grand-child is not liable, at common law, for the support of his grand-parent.

Decided at *Danbury,* *June 27.*

| 3 | 507 |
|---|---|
| f73 | 612 |
| 3 | 507 |
| 75 | 67 |

THIS was an application, made by the select-men of *Wethersfield*, to the county court, stating, that *Olive Montague* of

Wethersfield
*v.*
Montague.

that town, having, by reason of age, sickness and other infirmities, become unable to support and maintain herself, and having no estate wherewithal she could be supported or maintained, did, on the 5th of *October*, 1818, make application to said select-men for relief, support and maintenance ; that said select-men have, since that time, laid out and expended, for her support and maintenance, the sum of 150 dollars ; that *William Montague, Moses Montague, William Montague 2nd, Justus Montague, William Johnson, Gurdon H. Montague, Eunice Montague, Abigail Montague, Noble Montague, George Warner, Martha Montague, Sally Montague,* and *Olive Montague,* stand in the degree or line of grand-children to said *Olive Montague,* and are of sufficient ability to support and maintain her, and are the only relations liable by law to support and maintain her.    The petitioners, therefore, prayed, that the court would order these grand-children to pay to the petitioners, in their capacity of select-men, the sum of 150 dollars, expended for the past support of *Olive Montague,* and to contribute such sums, for her future support, as should be deemed just and reasonable.    The petition was dated *March* 14th, 1820.    In *August,* 1820, the court passed the following decree : " This court, having duly considered the facts stated in said petition, and finding them to be true, so far as respects the future support and maintenance of said *Olive Montague,* do order and decree, that said *William Montague, Moses Montague, William Johnson, Gurdon H. Montague, Noble Montague* and *George Warner,* grand-children as aforesaid, pay each the sum of 34 cents *per* week, to the petitioners, from the 14th day of *March,* 1820, for the support and maintenance of said *Olive Montague ;* and that execution issue quarter-yearly from the 14th of *March,* 1820, for each one's proportion of her future support and maintenance, which shall remain unpaid."    The petitioners, not satisfied with this decree, brought a writ of error in the superior court, assigning for error, that the county court, after finding the facts stated in the petition to be true, omitted to order payment of the sum, which, previous to the date of the petition, had been expended, by the petitioners, for the support and maintenance of *Olive Montague.*    The superior court affirmed the decree complained of ; whereupon the present writ of error was brought.

*Hartford,*
June,
1821.

Wethersfield
*v.*
Montague.

*Mitchell*, for the plaintiffs in error, contended,     That upon the facts found, they were entitled to recover the money disbursed for Mrs. *Montague's* support, from the time she became unable to support herself.    The statute (*tit.* 88. *c.* 1.) declares the duty in explicit and unqualified terms : That *when*, and *so often as*, any person shall become unable to support himself, *then* he shall be supported, by the relations specified.    The provisions of this statute were copied from a *Massachusetts* statute, passed in 1693.    *Ancient Laws, p.* 251. *s.* 9.    And the latter statute was borrowed from the provisions of 43 *Eliz. c.* 2. *s.* 7.    See 16 *Vin. Abr.* 417.    But in *England*, it has been held, that an order that the grand-father should support the grand-child, and also *pay so much money for the time past*, while he was chargeable, was good.    *The Queen* v. *Joyce*, 16 *Vin. Abr.* 423. *pl.* 3.    S. C. cited 4 *Burn's Just.* 496.    And in *Massachusetts*, it has been settled, by a declaratory act of the legislature, that the relations specified may be assessed for charges incurred *before* application made for relief.    *Ancient Laws, p.* 660.    Now, it is an established rule, that where we adopt a statute, we adopt with it the construction given to it, unless there are local circumstances to render an exception necessary or proper.    But in this case, an exception on the ground of a difference in local circumstances, will not be claimed.    There is no reason, in the nature of the case, why the order should be exclusively prospective.    The duty of support exists *eo instanti* that the support is needed.    The order of the court does not *create* the duty ;  but is itself founded on a pre-existing duty.    The provisions of the 7th and 21st sections of the same statute, must have a retrospective operation, or they will be nugatory ;  yet the " support," in one of these cases, and the " maintenance," in the other, are to be recovered in the same way as the support in question.

It may be said, that the *remedy* provided by the statute, must, from its nature, be prospective.    But, in the first place, there is no more difficulty under our statute, than under that of the 43 *Eliz.*, in extending the order to disbursements for *past* support : there is no absurdity in its being both prospective and retrospective.    Secondly, the existence of the duty, and consequently, of the corresponding right, being declared by statute, the common law will furnish an adequate remedy to give effect to that right.    Where one person among seve-

*Hartford,*
*June,*
*1821.*

*Wethersfield,*
*v.*
*Montague.*

ral, on whom the duty of furnishing support devolves, furnishes the whole support, without application to the court for an order, he may bring his action against the others for contribution. *Reeve's Dom. Relat.* 286.

*I. Perkins* and *W. W. Ellsworth*, for the defendants. The duty of children and grand-children to support their parents and grand-parents, is an imperfect obligation at common law. *Edwards* & ux. v. *Davis*, 16 *Johns. Rep.* 281. But if this duty was perfect, and could be enforced, by an action at common law, the result, in this case, must be the same, because this application is made upon the statute.

Where a remedy is given, by the same statute that creates the duty, it is the only remedy to enforce the duty. *Almy* v. *Harris*, 5 *Johns. Rep.* 175. *Edwards* & ux. v. *Davis*, 16 *Johns. Rep.* 285. *Smith* v. *Drew*, 5 *Mass. Rep.* 515, 6.

That the duty and remedy, in this case, are both prospective, is apparent from an inspection of the statute. The duty is created, and declared, in these words : " Which sufficient relations *shall provide*, &c. as the county court *shall judge* just and reasonable." To enforce this duty, the court is empowered to require the relations specified to " give sufficient security to abide by, and fulfil, the judgment of the court ;" and, on failure, " the court may award execution *quarterly*." (*Sect.* 1. 3.) The execution, which is prospective, covers the whole duty.

By the statute, grand-children are to support their grand-parents, *provided they are able ;* and that ability is to be found, and declared, by the court. The court can enquire into the *present ability* only of those, who are called upon for support. To go back to *past* periods, would be useless, and end only in confusion. How will you ascertain the precise ability of relations at periods past ; and what were their corresponding duties, at the various times when supplies were needed ? If the court cannot look to past ability, they cannot say, that there is past duty ; since the duty rests only on the ability, found and declared by the court. If the statute is retrospective, then so far the assessment ought to be made upon past ability. But nothing can be more unjust, or against the spirit of the statute, than to make past ability the measure of present duty.

The statute of 43 *Eliz.* is essentially different from ours; and as to the *Massachusetts* statute, from which some of the provisions of ours were derived, it is to be observed, that it has there been found necessary to pass an additional act, in order to subject relations for past support.

*Hartford,*
June,
1821.

*Wethersfield*
*v.*
*Montague.*

HOSMER, Ch. J. It is the duty of a parent to maintain his children until they arrive to the age of maturity ; but to support his parents or grand-parents, a child is under no common law liability. *Reeve's Dom. Rel.* 285. *Rex* v. *Munden,* 1 *Stra.* 190. *Edwards* & ux. v. *Davis,* 16 *Johns. Rep.* 281. Undoubtedly, he is under a moral obligation to do it ; but it is a duty of imperfect obligation ; and the legal right to demand maintenance from a child, by a parent, as well as the legal remedy to enforce it, depend exclusively on the statute.

The decisions on the 43 *Eliz. c.* 2. *s.* 7. shed no light on the construction of our own law. That statute confides the extent and manner of the support entirely to the justices of the county, without designating the remedy ; and the whole subject, whether the support be prospective or retrospective, is submitted to their discretion. It is equally obvious, that the determinations in the state of *Massachusetts* are of no avail here, as they are founded on an act explanatory of a former law, the construction of which was doubtful ; by which latter act, past expenditures are explicitly allowed.

In the construction of the statute, (*tit.* 88. *c.* 1.) the three first sections, which are all that relate to this subject, must be expounded together. The right and remedy, unquestionably, are co-extensive. The extent of the remedy being ascertained, we are certain of the confines to which the right extends.

By the first section of the law, idiots and others, who are poor and impotent, are to be supported, by certain specified relations ; " and having no estate wherewithal they may be supported and maintained, then they, and every of them, shall be provided for, taken care of, and supported, by such of their relations, as stand in the degree or line of father or mother, grand-father or grand-mother, children or grand-children, *if they are of sufficient ability to do the same ;* which sufficient relations shall provide such support and maintenance, *in such manner or proportion,* as the county court shall judge just and reasonable."

*Hartford,*
*June,*
*1821.*

*Wethersfield*
*v.*
*Montague.*

Were I to stop here, I should be of the opinion, that the support provided by this law is entirely prospective. The provision, by the former part of the recited clause, would seem to commence at the time when the pauper was first reduced to necessity ; but it is unwarrantable to found the construction of the act, on a part, and the smaller part too, of its expressions. Not only the *ability* of the relations to support, but the *manner and proportion* in which they are to contribute, must be designated, by the court, before *either of them* can know what is his obligation. It would seem strange, that the law should prescribe a right, and impose an obligation, the knowledge of which must elude the vigilance of the wisest man in the community. But the seeming obscurity will vanish, as soon as recurrence is had to the second and third sections of the law, which prescribe the remedy. The county court is authorized to make an order, assessing the relations in such sums as shall be considered equitable. " And if any such relations, who shall, by such court, be assessed, or ordered to pay and contribute any certain sum or sums for the purpose aforesaid, shall neglect to do the same, *or give sufficient security to abide by, and fulfil, the judgment of the court, the said court may award execution quarterly against such persons respectively.*" These provisions are all compatible with a prospective remedy, and conclusive indications of the legislative intent. The court is to make an order; but on this no execution is to issue, if the person assessed *will give security to comply with it :* and if he will not, execution is to be granted *quarterly.* Who ever heard of *giving security,* as a legal compliance with a judgment for a debt ; or, of issuing *quarterly executions* for a liquidated demand ?

I am bound to construe the statute in question, like all other public laws, not by my impression as to what the law ought to be, but by eviscerating the reason and spirit of the act, from the signs which are used to convey the legislative intent. Guiding myself by this principle, I am clearly of the opinion, that the provision of the law is wholly prospective ; and, of consequence, that in the judgment complained of, there is no error.

PETERS and BRAINARD, Js. were of the same opinion.

CHAPMAN and BRISTOL, Js. dissented.

Judgment affirmed.